AO 243 (Rev. 2/95)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Western District of New York | | |
|---|---|---|---|
| Name of Movant: Mark Friedman | Prisoner No. 11571-055 | | Case No. 02-CR-48-A |
| Place of Confinement: FCI Elkton, Elkton, Ohio | 07 CV 0545A | | |
| UNITED STATES OF AMERICA | V. | MARK FRIEDMAN (name under which convicted) | |

## MOTION

1. Name and location of court which entered the judgment of conviction under attack

    U.S. District Court, Buffalo, New York

2. Date of judgment of conviction   October 1, 2003

3. Length of sentence   81 months

4. Nature of offense involved (all counts)

    18 U.S.C. §2422 b Utilizing the internet in an attempt to entice a minor to engage in sexual activity; 18 U.S.C. §2423 b Traveling interstate for the purpose of engaging in sexual activity with a minor.

5. What was your plea? (Check one)
    (a) Not guilty          [X]
    (b) Guilty              [ ]
    (c) Nolo contendere     [ ]

    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

    _____

    _____

    _____

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
    (a) Jury         [X]
    (b) Judge only   [ ]

7. Did you testify at the trial?
    Yes [ ]   No [X]

8. Did you appeal from the judgment of conviction?
    Yes [X]   No [ ]

AO 243    (Rev. 2/95)

9. If you did appeal, answer the following:

   (a) Name of court  **United States Court of Appeals for the Second Circuit**

   (b) Result  **Conviction confirmed. Case remanded for reconsideration of sentence.**

   (c) Date of result  **July 20, 2005**

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
    Yes ☐    No ☒

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court _____

        (2) Nature of proceeding _____

        (3) Grounds raised _____

        _____

        _____

        _____

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
            Yes ☐    No ☐

        (5) Result _____

        (6) Date of result _____

    (b) As to any second petition, application or motion give the same information:

        (1) Name of court _____

        (2) Name of proceeding _____

        (3) Grounds raised _____

        _____

        _____

        _____

AO 243    (Rev. 2/95)

    (4)  Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐    No ☐

    (5)  Result _____

    (6)  Date of result _____

(c)  Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
    (1)  First petition, etc.        Yes ☐    No ☐
    (2)  Second petition, etc.     Yes ☐    No ☐

(d)  If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12.  State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

<u>CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.</u>

    For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b)  Conviction obtained by use of coerced confession.

AO 243      (Rev. 2/95)

    (c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
    (d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
    (e) Conviction obtained by a violation of the privilege against self-incrimination.
    (f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
    (g) Conviction obtained by a violation of the protection against double jeopardy.
    (h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
    (i) Denial of effective assistance of counsel.
    (j) Denial of right of appeal.

A. Ground one: **Ineffective assistance of counsel.**

Supporting FACTS (state *briefly* without citing cases or law):

**Please see attached.**

B. Ground two: **The Assistant U.S. Attorney Martin Littlefield is guilty of blatant and serious prosecutorial misconduct.**

Supporting FACTS (state *briefly* without citing cases or law):

**Please see attached.**

C. Ground three: **The jury was denied the opportunity to review the transcripts.**

Supporting FACTS (state *briefly* without citing cases or law):

**Please see attached.**

(5)

AO 243      (Rev. 2/95)

    D. Ground four: _____

_____

    Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

None of the grounds listed have been previously presented. The only opportunity I would have had to raise any of these grounds would have been during my appeal to the Second Circuit and for this, I did not have an opportunity to speak with my attorney Steven Feldman prior to his submitting the motion.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes ☐    No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing   Alan D. Goldstein, 42 Delaware Avenue, Suite 525
        Buffalo, New York 14202

    (b) At arraignment and plea   Alan D. Goldstein, 42 Delaware Avenue
        Buffalo, New York 14202

    (c) At trial   Kimberly Schecter & Mary Beth Covert, Federal Public Defenders
        300 Pearl Street, Suite 450, Buffalo, New York 14202

    (d) At sentencing   Kimberly Schecter & Mary Beth Covert, Buffalo, New York

AO 243   (Rev. 2/95)

(e) On appeal   Steven & Arza Feldman, Feldman & Feldman
626 EAB Plaza, West Tower, Sixth Floor, Uniondale, New York 11556

(f) In any post-conviction proceeding _____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒   No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐   No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐   No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

August 13, 2007
Date

*Mark Friedman*
Signature of Movant

(7)

A. Ground One: Ineffective assistance of counsel.

Supporting Facts:

Although I was determined from the very beginning to take the stand at my trial, and made this abundantly clear to my attorneys Kimberly Schecter and Mary Beth Covert on many, many occasions, my attorneys put unrelenting pressure on me not to take the stand. I eventually caved in to this pressure and was thereby deprived of my right to testify at trial.

From the very moment I learned I had been indicted, I was absolutely determined to go to trial and I was absolutely dead-set on testifying because I knew the government would present evidence that, on its face, would cast me in a very unfavorable light in the eyes of the jury. But I knew that if given the opportunity to explain to the court what the evidence truly represented and if given the opportunity to explain what my intentions truly were with the conviction of someone who knows he has been wrongly portrayed, I would have a very good shot at convincing the jury of my innocence.

I never got the opportunity to explain to the jury that in the instant message I sent to Brandy, "I'll show it to you Saturday," I was **not** telling Brandy I would show her my penis as the government stated. Rather, I was stating I would show her a photograph. Brandy, at the time, was insistent I show her a photograph of my penis. I had no intention of doing so because I knew it was completely inappropriate. This was born out by the fact that Brandy herself stated in court she never saw a picture of my penis. When I told Brandy, "I show it to you Saturday," meaning a **photo**, I knew Brandy would drop the subject because I knew she would believe I would make good on my promise to show her such a photo. But I only said what I said so Brandy would drop the subject.

Because I was never given the opportunity to explain what the instant message truly meant, the government got away with convincing the jury I intended to show Brandy my penis when me met. This one piece of evidence, wrongly portrayed, had a devestating effect on the outcome of my trial because it convinced the jury I intended to engage in sexual activity with Brandy.

In its denial of my appeal, the Second Circuit concluded, "The evidence of the defendant's guilt was extremely strong. It included...the defendant's instant messages to Brandy that upon their meeting he wanted her to see him in an aroused state..."

Had the Second Circuit been able to read my explanation of the instant message, an explanation which would have been at their disposal had I testified, it is highly probable they would not have cited the message as a factor proving my guilt.

The day before my trial, I informed my attorneys, Kimberly Schecter and Mary Beth Covert that I was still determined to testify. Not only did they not want me to testify, they were attempting to dissuade me from going to trial at all. They essentially stated that if I insisted on going to trial, I dare not testify too, which would make two mistakes. In a meeting in Ms. Schecter's office, the day before the trial, both attorneys were unrelenting in their insistence that I not testify. Reluctantly, I backed down only to please them. But their concern that I would contradict myself in the face of Martin Littlefield's skillful tactics was unwarranted because I knew what truly occurred during my meeting with Brandy

and I knew I did not break the law. I knew I was fully capable of explaining what events and evidence truly represented in a coherent, convincing manner despite any attempts by Mr. Littlefield to make me do otherwise. I knew that if I stuck to the truth, I would have no problem. As it was I was denied my constitutional right to testify in my own defense.

It can be easily shown that Ms. Schecter and Ms. Covert were ineffective in that they failed to adequately explain to the court that it would have been inconceivable for the activity between Brandy and myself to have gone beyond kissing after the moment the security guard knocked on my car window. We know this with certainty because at the moment the guard knocked on my window it was approximately five minutes to the time Brandy had agreed to meet her mother at the mall entrance. We know this crucial piece of evidence was not clearly explained to the court because in his denial of my request for resentencing dated August 22, 2006, Judge Arcara stated, "But for the fact he was caught in the act by a mall security guard, it is likely the sexual encounter would have gone much further."

Additionally, Ms. Schecter was ineffective because she did not question the witness for the defense, Monique Danford on her habit of leaving items such as shoes, clothing, etc. in my car and she did not move to have the list of names, for which there was no proof whatsoever of any of the women's ages, suppressed.

B. Ground Two: The Assistant U.S. Attorney, Martin Littlefield, is guilty of blatant and serious prosecutorial misconduct which had a detrimental effect on the outcome of my trial and on the outcome of my appeal to the Second Circuit.

Supporting Facts:

The Assistant U.S. Attorney deliberately lied during oral argument before the Second Circuit. At one point, the Court requested the government's position on my request for resentencing. Littlefield stated in court that at the moment of my meeting with Brandy, I was 41 years old. Littlefield knew I was 39 at the time of our meeting.

Mr. Littlefield stated that I told Brandy I was 16 or 18 depending on the various conversations we had, as if an instant message had been found which clearly revealed this. The fact is that I never told Brandy I was 16 or 18. I told her that I was 23 and I never told her I was any age other than 23. Mr. Littlefield relied on the testimony of Brandy, a witness who not only had been proven to have lied before the trial, but who had been caught lying during the trial itself.

Thirdly, during oral argument before the Second Circuit, Littlefield, after very severe admonishment by the Court (at one point the court stated, "Why, in light of Judge Leval's concerns, do you think that the government ought to prevail in any event? Why isn't the result of your concessions in court-why doesn't that require this court to vacate the sentence and remand the case for a new trial?"

Also,"I wish that when a prosecutor tries cases, they would think that the day is going to come, if you get a conviction, when you're going to have to be in front of a Court of Appeals and you're going to have to defend what you did in the trial court."

And, regarding Littlefield stating that asking Brandy if she knew what a cock was was a "spur-of-the-moment question," Court: "But as I read the record I asked myself, was that a spur-of-the-moment question, and it sure didn't seem like it, because the first thing that was said was, why would you say would you say a thing like that Brandy; did you know what a cock was? That seemed to me-and I'm not going to contradict you, but I can tell you my reaction on reading it was that it sounded like carefully rehearsed theater."

Also, Court: "So you used that question (Do you know what a cock is?) in order to establish on a totally irrelevant issue, a sympathy running for the victim and very much against the defendant. And when the defendant sought to impeach that testimony, you threw up a wall, convincing the judge that Rule 412 absolutely forbids this because Rule 412 prohibits prior sexual experience of the victim and sexual proclivities of the victim from being introduced, but it wasn't being introduced for that. It was being introduced, being offered to try and rebut some totally inappropriate testimony on which she had perhaps lied. And which, while it was irrelevant, had a potentially large bearing on the jury's sympathies in the case. Is anything that I've just said incorrect?" Littlefield: "No." Court: "Well you know it is a real problem-to have the prosecutor have messed it up by overreaching, first asking irrelevant questions to try to elicit sympathy of the jury and then improperly obstructing the defendant's efforts to impeach that irrelevant testimony by throwing up a misinterpretation of a rule of evidence." Littlefield: "Judge your admonitions and criticism are appropriate.")

After this admonishment and confession by Littlefield, Littlefield stated that despite the misconduct he engaged in, there was still overwhelming evidence to prove my guilt. Among this evidence he mentionned:

1) <u>A list of names I had with me</u>, even though the actual identity of those women was never determined by the government. It follows that no age can be attributed to persons whose identity has not even been confirmed. So this was a lie on Littlefield's part.

2) <u>I travelled ten hours to get there</u>, though it can be easily established and confirmed by Monique Danford and several others, that on dozens of occasions I drove 220 miles each way from New Jersey to Rhode Island to visit Monique Danford (she testified at trial). From 1999 to the present, the friendship between Monique Danford and myself has been <u>strictly</u> platonic.

3) <u>"The fact that he had a car full of condoms with him"</u> was a very damaging statement indeed. Littlefield intentionally took advantage of the fact that my appeal attorney, Steve Feldman, was not present at my trial, and was not aware of the fact that at trial the condoms found in my car were clearly shown to have had no relevance to my meeting with Brandy. At trial, Monique Danford testified she had inadvertently left the condoms in my car and proved this by bringing with her the remaining condoms from the bag she had been given by the Family Planning Clinic in Danbury, Connecticut, whose serial numbers proved they were from the same batch as those found in my car. Furthermore, Brandy herself stated at trial she never saw any condoms the entire time she was in my car. And, there was <u>no</u> additional time beyond when the security guard knocked on my car window for the condoms to have been produced because at the moment he knocked on my car window, it was five minutes from the time I was to drop Brandy off at the mall entrance to meet her mother.

Littlefield's intentional efforts to portray the condoms as relevant, knowing full well they had been shown at trial to be irrelevant, and suspecting Mr. Feldman, having not presided at trial, to be unaware of their irrelevance, succeeded in deceiving the Court. In its decision, the Second Circuit cited the presence of the condoms as a crucial factor which proved my intention to engage in sexual activity with Brandy. Mr. Littlefield's intentional deception weighed heavily in the Second Circuit's decision to confirm my conviction.

Mr. Littlefield's proclivity for telling lies in the courtroom revealed itself very early on, when during my bail hearing in February of 2002, he stated categorically that a semen stain had been found in my car following my meeting with Brandy. Mr. Littlefield did not state it might be a semen stain or that he suspected a semen stain was found; he stated a semen stain **was** found in my car. Subsequent tests by the F.B.I. proved their was indeed **no** semen stain.

Ground Three: The jury was denied the opportunity to review the transcripts.

Supporting Facts:

At one point, during deliberations, the jury made a request to see a portion of the trial transcript. When it was determined the procurement of the transcript would take a substantial amount of time, the jury decided they would be able to come to a decision without the transcript.

Once the jury makes a request to review the trial transcript, especially when their subsequent decision not to review said transcript might be said to have been based on the inordinate amount of time required to procure it, this initial decision to review the transcript should not be able to be rescinded. The defendant must be given the benefit of the doubt, and it must be assumed that the real reason the jury has changed its mind regarding their desire to review the transcript, is that it does not wish to endure a long delay. Whatever time to procure the document is necessary should be taken, despite the jury's impatience to conclude the trial.