FILED

2007 DEC 21 PM 1:53

U.S. DISTRICT COURT
W.D.N.Y. - BUFFALO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

MARK FRIEDMAN, 11571055,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

                  02-CR-0048A
                  07-CV-0545A

---

MEMORANDUM IN REPLY

## REQUEST FOR APPOINTMENT OF COUNSEL

In light of the complexity of the issues contained within his Petition and in light of the fact that that he does not possess the legal knowledge to make the most effective reply possible, this petitioner respectfully requests the Court to appoint him counsel.

## REQUEST FOR POSTPONEMENT

On May 5, 2007, this petitioner wrote to the Office of Professional Responsibility in Washington, D.C. advising them that Martin Littlefield, Assistant U.S. Attorney, Buffalo, was guilty of prosecutorial misconduct including deliberate misrepresentation of evidence and instructing witnesses to lie. On September 7, this petitioner received a reply dated August 15, 2007 from Carmela A. Cowgill, Executive Officer with the Office of Professional Responsibility stating she was in receipt of my letter and that her office was reviewing the complaint against Mr. Littlefield and would advise me of the results upon completion of their review.

To date, the petitioner has not received a reply from the O.P.R. Therefore, in light of the fact that the O.P.R.'s reply could have a significant impact on the content of the petitioner's memorandum in reply, the petitioner respectfully requests that this Court postpone its final reply pending the results of the O.P.R.'s investigation. The petitioner also respectfully requests this Court to allow him to file an Amended Memorandum in Reply once he is in receipt of the O.P.R.'s final reply.

Attached, please find a copy of The O.P.R.'s acknowledgement of my letter dated May 5, 2007 to the O.P.R., as well as a request dated December 13, 2007 in which I ask the O.P.R. for an urgent reply with regard to their review of Mr. Littlefield. Please refer to Exhibits One and Two.

I would respectfully ask that the Court note the following inaccuracies contained in the government's Proof at Trial subsection located within its Facts and Procedural History Relevant to the Petition Section:

1. At the taped deposition, Mr. Fijalkowski testified that when he approached my car, I rolled down the driver's side window. This would have been impossible because several months previous to January 12, 2002, the mechanism in my electric window on the driver's side failed while I was driving my twenty-four year old date from New Jersey to her home in Brooklyn, New York. The young woman helped me locate a car window repair store where the mechanic was unable to fix the window because he needed a part he could not readily obtain. He offered to place the window in its upright position until I could get the mechanism repaired. As of January 12, 2002, I had still not had the repair done so the window could not have been rolled down on the afternoon of January 12, 2002.

2. Mr. Fijalkowski also testified that when he asked me my age, I replied that I was 31. In fact, I replied in a clear, distinct voice that I was 39. Based on these two inaccurate statements, we may conclude that Mr. Fijalkowski's memory is faulty or that Mr. Fijalkowski's memory is faulty **and** he is hearing impaired. Either way his testimony is unreliable.

3. <u>I repeatedly asked Brandi to meet me.</u> This is untrue. Brandi indicated a strong liking for me from the very first day we spoke. There was no need for me to repeatedly ask Brandy to meet me because the very first time the subject of meeting came up, Brandi was very much interested in meeting. From the very beginning, it was never a question of if we would meet. It was only a question

of when. It was I who suggested we wait a little until we got to know each other better.

4. "At the initial internet conversation and over the next two months Friedman constantly asked her if she would have sex with him." The suggestion that I would ask Brandi or any girl I had just met to have sex with me is absolutely and utterly preposterous! The question of whether to have sex with someone is a matter that for me, or any normal person, would only come up after getting to know the person extremely well-after having come to feel close to that person. These things take time. I felt lucky just to know Brandi- to know that she liked me and that she was there for me. The only physical desire that ever entered my mind with regard to Brandi was to kiss her. For me, kissing Brandi was in and of itself something I imagined would be wonderful and just being able to kiss her would have more than satisfied any physical desire I had for her. For me, sex never even enters my mind until I've had several dates with a girl. Secondly, never during any of our telephone or internet conversations did I ask Brandi to have sex with me. For the major part of the time I was talking to Brandi, I was under the impression she was sixteen. But Brandi was a soft spoken person and I would have felt extremely uncomfortable bringing up the subject of sex with her. It just felt completely inappropriate. During our conversations, we spoke **only** of her school, her friends, her mom, my friend Monique, movies, food, etc. **Never** did we speak about sex. This is why I was completely shocked when she asked me to see my "cock". It was completely out of character for the Brandi I knew. I am convinced that Mr. Littlefield told Brandi to say these things when she took the stand. I am not going out on a

on a limb in suggesting that Mr. Littlefield coached Brandi to lie about our conversations and about touching her in inappropriate places. The Second Circuit made the same observation when at oral argument, referring to a different conversation, it stated "it seemed to me like carefully rehearsed theater."

5. <u>There were condoms in my Nautica bag.</u> The fact of the matter was I never placed any condoms in my bag at any time. I've only purchased condoms once in my life and that was in 1994. If there were any condoms in my bag, they were placed there **after** my car was seized by someone other than myself.

6. <u>I touched Brandi's breasts and vagina.</u> I **never** touched Brandi in any inappropriate place.

The government is not prepared to acknowledge the seriousness of Mr. Littlefield's misconduct and the detrimental effect this misconduct had on the outcome of my case. This is not surprising-clearly it is not in the government's interest to do so. Instead, the government attempts to downplay the significance of the untruthful and deceitful statements Littlefield made during the course of the proceedings.

For example, regarding Littlefield's statement during oral arguments before the Second Circuit that there was adequate proof of my guilt despite the improper way in which he had conducted himself at trial, the government now argues that every physical item that Littlefield mentioned was indeed present and that any untruthful statement Littlefield made regarding these items was innocuous. **This argument is clearly erroneous.** To misrepresent the significance of a physical item is equally as damaging as claiming that an item that is not present is present.

After stating there was more than adequate proof of my guilt despite his misconduct, Littlefield stated that this proof in part consisted of "condoms being everywhere", even though it was clearly shown at trial that the presence of the condoms was irrelevant to my meeting with Brandi. It was shown at trial that the condoms were inadvertantly left in my car by Ms. Danford, that Brandi never saw them the entire time she was in my car and that there was no time for them to have been produced given the fact that when the security guard knocked on my window, it was five minutes to the time Brandi was to meet her mother. Therefore, Littlefield deliberately misrepresented the condoms to the Second Circuit as something they were not in a clear attempt to deceive

the Court. In light of my argument, the government now clearly errs in asserting there was nothing wrong with Littlefield's misrepresentation of the items found in my car. In misrepresenting the condoms as proof that I traveled to Buffalo to have sex with Brandi, Littlefield is clearly culpable of very serious prosecutorial misconduct.

The thing that makes Mr. Littlefield's misconduct so serious is that his statements cannot be attributed to honest mistakes in his recollection of the record. Mr. Littlefield's lies represent deliberate attempts to deceive both the jury and the Court. Mr. Littlefield was well aware of the fact he did not possess sufficient evidence to secure a conviction. In fact there was not one scintilla of physical evidence that proved I intended to engage or did engage in sexual activity with Brandi. Mr. Littlefield's only recourse was to deceive the Court. It is now clear he chose that option.

In my petition, I stated that Littlefield's habit of lying in the courtroom revealed itself early on when at my bail hearing in February of 2002, he told the court that semen had been found in my car as if it were a fact. I explained this was an outright lie because tests later revealed no such stain existed. Apparently the government agrees Littlefield is a habitual liar because it made no attempt to refute my claim in its response.

The government now contends that the deception Littlefield engaged in during oral arguments before the Second Circuit did not represent conduct that can be challenged in a 2255. This statement is preposterous. During oral arguments, the Judges ask questions of the attorneys present in order to gain a solid understanding of what has occurred both during the time of the alleged offense and during the trial itself. After asking questions they believe believe will allow them to arrive at this understanding, the Judges must decide whether the defendant has received a fair trial.

It goes without saying that if the Judges are unknowingly swayed by statements they believe to be true but that are in fact lies, they will be led to reach a decision that is incorrect.

The petitioner is certain that the Second Circuit would insist on hearing the truth in order that they might come to a decision that is correct and fair. This petitioner is certain that deliberately deceving a Circuit Judge in order to try to make him come to an incorrect decision absolutely represents misconduct that can and **must** be challenged in a 2255 motion.

The government now contends that any prosecutorial misconduct that did occur was not severe enough to have affected the jury's verdict. However, Mr. Littlefield instructed the star witness, Brandi, to lie on the stand, instructing her to state that I had asked her many times to have sex when I had not; to state that our conversations on the phone and on the internet were sexual in nature when in fact they never were; and finally Littlefield instructed Brandi to testify that I had touched her breasts and vagina, when in fact I had not.

My contention that Mr. Littlefield coached Brandi is supported by the opinion of the Second Circuit, one of the highest Courts in the land, when it stated, "it seemed to me like carefully rehearsed theater."

Instructing the star witness to lie on the stand about issues that directly affect the jury's verdict certainly represents misconduct of a most egregious nature.

In light of the misconduct Mr. Littlefield has engaged in, including instructing a key witness to lie on the stand about issues that directly affect the jury's verdict, I respectfully ask this Court to reverse my conviction, or in the alternative, to quash it.

In its decision dated August 22, 2006, this Court concluded, "But for the fact he was caught in the act by a mall security guard, it is likely the sexual encounter would have gone much further."

The government now concedes that at the moment the security guard approached my car, it was five minutes to the time Brandi was to meet her mother at the mall entrance. Consequently, contrary to the Court's above statement, it would have been impossible for things to "have gone much further." Therefore, I respectfully request this Court to reconsider its decision to deny my request for resentencing. It is now clear the Court has erred, albeit unintentionally. It is only fair that this Court give serious reconsideration to reducing my sentence as it reached an erroneous conclusion due to its having unintentionally misconstrued the facts.

Respectfully submitted,

Mark David Friedman

December 13, 2007



U.S. Department of Justice

Office of Professional Responsibility

950 Pennsylvania Avenue, N.W., Suite 3266
Washington, D.C. 20530

AUG 15 2007

Mark David Friedman
Reg. No. 11571-055
Federal Correctional Institution
P.O. Box 10
Lisbon, Ohio 44432

Dear Mr. Friedman:

    We are in receipt of your May 5, 2007 letter to this Office, in which you allege misconduct by an Assistant United States Attorney Office for the Western District of New York in the handling of your case. The Office of Professional Responsibility (OPR) is responsible for investigating allegations of misconduct involving Department of Justice attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by law enforcement personnel when they are related to allegations of attorney misconduct within the jurisdiction of OPR. We are reviewing the your complaint and will advise you of the results when we have completed this review.

    Thank you for bringing this matter to our attention.

Sincerely,

Carmela A. Cowgill
Executive Officer

December 13, 2007

Mark David Friedman
11571055
P.O. Box 10
Lisbon, Ohio 44432


Carmela A. Cowgill, Executive Officer
Office of Professional Responsibility
950 Pennsylvania Avenue, N.W.
Suite 3266
Washington, D.C. 20530


Dear Ms. Cowgill:

Regarding your letter dated August 15, 2007 regarding your review of Mr. Littlefield, Assistant U.S. Attorney, please urgently advise the status of your review, as I have submitted a Petition to the United States District Court in Buffalo in which I have stated that the misconduct engaged in by Mr. Littlefield represents grounds for reversing my conviction.

As the determinations made by your Office could have a meaningful impact on the content of my Memorandum in Reply to the government's response, I would appreciate a prompt reply on your behalf. My response is due on December 23, 2007. I have asked the Court for a postponement of its decision pending your Office's conclusion. I do not know if this request will be granted.

Regarding the allegations of misconduct I have made against Mr. Littlefield, specifically with regard to his having instructed witnesses to lie on the stand, it occurred to me that your good Office might approach Ms. Brandi Schalk, the complaintant and ask her once again if she was instructed to lie on the stand. I will leave it to your good Office to determine whether this would be appropriate and whether it would assist you in your review.

Very truly yours,

*[signature]*

Mark David Friedman

CERTIFICATE OF SERVICE

I hereby certify that I have mailed the foregoing, by the United States Postal Service to:

United States Attorney
Western District of New York
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

Attn: Monica J. Richards